OPINION OF THE COURT
Edward W. McCarty III, J.
In connection with the final account of Orin A. McCluskey, as the sole surviving trustee of the trust created under article tenth of the will of Allan S. Lehman, a motion has been filed by the trustee for an order, pursuant to CPLR 3124, compelling objectants Susan Carmichael, Brooke Lehman and Sage Lehman to comply with movant’s discovery requests for production of their personal investment portfolio account statements for the period of June 1, 2008 to date. For the reasons set forth below, the motion is denied.
Background
The trust before the court was created under the will of Allan S. Lehman (hereinafter decedent), dated January 25, 1950. The will was amended by two codicils, dated October 3, 1950 and April 10, 1952. Decedent died on November 8, 1952.
Under the pertinent portions of decedent’s will, he created a trust for the lifetime benefit of his son, Orin Lehman (hereinafter Lehman). Decedent also gave Lehman a testamentary power of appointment over the remaining principal contained in the trust at the time of his death. Lehman exercised this power in article fifth (A) of his own last will and testament, dated February 26, 2003.
Lehman died on February 22, 2008 and his will was admitted to probate by the Surrogate’s Court of New York County. In exercising the power granted to him under decedent’s will, Lehman appointed all of the principal and accrued and accumulated income of the trust created for his benefit to the trustees named under his own will, for the benefit of his children who survived him, with a further share for the issue of a predeceased child. The trustees named in Lehman’s will were directed to pay one share outright to each of the testator’s children who survived him and reached the age of 30.
All three of Lehman’s children, Susan Carmichael, Brooke Lehman and Sage Lehman (hereinafter the objectants), survived him and have attained the age of 30. The trust, which was to terminate upon Lehman’s death on February 22, 2008, was thus to be divided into three equal shares, with one share to be distributed to each of decedent’s children. The amended peti *484 tion to settle the account reflects that the gross value of the trust assets was $8,893,803.32. The trust assets were distributed to Lehman’s daughters in March of 2009.
Orín A. McCluskey filed his account on January 20, 2011; it was amended on March 8, 2011. Objections to the account dated July 18, 2011 were filed on behalf of the objectants. Among the 13 objections raised, number 3 states that schedule A-l of the account fails to reflect that there were decreases in the value of trust assets caused by “the trustee’s (a) unreasonable delay after the termination of the trust at the death of the income beneficiary (on February 22, 2008) in winding up the trust administration and in making an expeditious distribution of trust assets to the remaindermen, and (b) mismanagement of trust assets.”
In response, the trustee posits that even if the objectants succeed in proving that he acted imprudently in not distributing the trust assets sooner than 13 months after the trust termination, they still must prove that they suffered actual damages as a result of the trustee’s imprudent behavior. It is on the basis of this argument that the trustee, in the context of discovery, requested production of the objectants’ personal investment portfolios for two time periods:
(1) From June 1, 2008 to March 2009. The trustee states that his reason for requesting the objectants’ personal financial records is to determine whether the objectants would have chosen to sell or retain the trust securities had the trustee distributed the securities to the objectants on an earlier date. The trustee hopes to offset any damages which may have resulted from his retention of the trust securities by showing that the objectants would not have sold the securities during that time period, even if they had been able to do so.
(2) From March 2009 to date. The trustee’s goal in requesting the statements for this time period is to determine whether the objectants retained or sold the trust securities that he had distributed to them in kind, on the theory that any increase in value subsequent to distribution “would be an offset against any damages for the value of said securities as of their sales date, if sold, or as of the current date, if retained.”
Analysis
The initial question to be addressed by the court is whether damages incurred by the trustee’s retention of certain securities would be offset if the trustee proved that:
*485 (1) Even if the trustee had distributed the securities earlier, the objectants, like the trustee, would not have sold the securities during the time period in question.
(2) After the date of distribution, either on the date on which the securities were sold by the objectants, or on the present date in the event that the securities were retained, the securities increased in value.
Only if this information could be used to offset damages could the requested documents be deemed material and relevant to the proceedings so as to be discoverable by the trustee.
By arguing that the losses, if any, incurred by the trustee’s retention of securities beyond the date on which they should have been distributed would be offset by a showing that the beneficiaries would have retained the securities even if the securities had been distributed to them on an earlier date, the trustee is essentially proposing that an imprudent trustee can offset the losses resulting from his mistakes if he can show that the beneficiaries would have made the same mistakes had the beneficiaries been in control and possession of the securities at the time errors were made. This necessarily implies that beneficiaries who have suffered losses as a result of a trustee’s improvident behavior cannot recover if the trustee can prove that the beneficiaries themselves, in managing their own personal portfolios, failed to meet the investment standard set by the Prudent Investor Act, which is that “[a] trustee shall exercise reasonable care, skill and caution to make and implement investment and management decisions as a prudent investor would for the entire portfolio, taking into account the purposes and terms and provisions of the governing instrument” (EPTL 11-2.3 [b] [2]).
The cases cited by the trustee in support of this theory address the issue of offsets, but the offsets recognized by these decisions do not include actual or theoretical investment errors made by the beneficiaries with regard to their personal assets. The offsets recognized are “[dividends and other income attributable to the retained assets [which can] offset any interest awarded” (Matter of Janes, 90 NY2d 41, 55 [1997]; similarly see Matter of Garvin, 256 NY 518 [1931]).
The trustee cites this court’s decision in Matter of Pollock (NYLJ, Sept. 17, 1998 at 24, col 4 [Sur Ct, Nassau County 1998]) in support of his position. However, in discussing how to measure the damages caused by a fiduciary’s negligent retention of assets, this court noted that one must calculate “the value of *486 lost capital ... by determining the value of the stock at the time the shares should have been sold, less their value when they were eventually sold or at the time of the accounting or at the time of the trial” (id. at 25, col 1). The court then goes on to address possible offsets, as follows: “Subtracted from this difference would be any amounts received as dividends or other benefits attributable to the retained assets (in this instance, the losses were used to offset capital gains from other stocks owned by trusts on the fiduciary’s tax return)” (id.).
Movant’s request for an order compelling the beneficiaries’ personal investment portfolios for the period of June 1, 2008 to March 2009 is denied.
The trustee’s request for the production of the beneficiaries’ personal investment portfolio statements from March 2009 to the present is based upon a different theory. For this time period, the trustee posits that if the value of the securities increased subsequent to the date on which the securities were distributed to the objectants, then the post-distribution appreciation, if any, can be used to offset the losses incurred by the retention of the securities prior to the date of distribution. However, the trustee cites no case law in support of this argument. In fact, the key issue is not whether the securities increased or decreased in value after the trustee distributed them to the objectants, but rather that, “[t]o the extent that objectants were denied timely receipt of the property in question, they were thereby denied the opportunity to do with the property thereafter as and when they wished, whether to hold it as a continuing investment, or to hypothecate it, or to reinvest it” (Matter of Lasdon, 32 Misc 3d 1245[A], 2011 NY Slip Op 51710[U], *6 [Sur Ct, NY County 2011]).
Movant’s request for an order compelling the beneficiaries’ personal investment portfolios for the period of March 2009 to the present is denied.
Conclusion
For the above-stated reasons, the motion is denied in its entirety.